REGAN, Judge.
Plaintiff, Joseph A. Romano, instituted this suit against the defendant, Southern Marine and Aviation Underwriters, Inc., his robbery insurer, endeavoring to recover the policy limits of $5000, representing part of a $13,000 loss he incurred as the result of a robbery of his restaurant and bar on March 4, 1957. Plaintiff further prayed for statutory penalties and attorney’s fees.
The defendant answered and denied coverage, asserting that plaintiff failed to comply with the policy provisions requisite to his recovery in that he did not itemize the property stolen nor did he produce books or records to substantiate his alleged loss.
From a judgment dismissing plaintiff’s suit, he has prosecuted this appeal.
This case was consolidated with two similar suits, arising out of two similar robbery policies, under which the insurers who issued them both denied coverage for substantially the same reason as the defendant in this matter. The suits referred to are entitled, Romano v. Maryland Casualty Company, La.App., 142 So.2d 570 and Romano v. National Union Indemnity Company, La.App., 142 So.2d 571.
The policy which formed the subject matter of this litigation contained the standard record-keeping clause, which reads:
“Underwriters shall not be liable for loss: (1) unless records are kept by the Assured in such manner that Underwriters can accurately determine therefrom the amount of the loss; * 4: * »
The record reveals that plaintiff operates a restaurant and bar business in Bridge City, Louisiana, under the trade name of Green Acres Tavern, which caters primarily to industrial workers. In order to attract customers, plaintiff has engaged in a check cashing service and to obtain the necessary funds to accommodate his trade. He borrowed sums of money up to $10,000 from the First National Bank in Westwe-go, which he customarily repaid within 48 hours.
On March 1, 1957, a Friday, plaintiff withdrew the sum of $13,121 from the bank, of which $10,000 represented a bank loan obtained the day before, and the balance, personal funds. This is established by the bank’s records.
Plaintiff testified that these funds were used to cash payroll checks that weekend, and the checks, together with the balance of the cash, were placed in his safe. Plaintiff kept no records of his check cashing activities, nor did he even run adding machine tapes at the end of each business day to balance his check cashing funds.
On the initial trial hereof, the only evidence introduced to prove that $13,000 in checks and cash was taken from the safe in the Monday morning holdup was plaintiff’s own testimony.
After judgment had been rendered against him, plaintiff moved for a new trial asserting he could produce newly discovered evidence. When the motion was granted, plaintiff produced two employees who testified that they had seen cash and checks in the safe. They did not know either the amount of cash or checks that were in the safe; however, they both related that this represented only check-cashing funds. The record fails to explain why this evidence could not be produced on the original trial; however, it added nothing of significance to the plaintiff’s case.
*570 Predicated on the foregoing facts, the trial judge concluded that the plaintiff failed to comply with the standard record-keeping clause in the policy and was thus not entitled to recover.
After carefully reviewing the record, we are of the opinion that the result reached by the trial court is correct. While we sympathize with plaintiff in sustaining his alleged loss, we are compelled to conclude that he alone is responsible for negating coverage outlined in the robbery policy in that he completely ignored the contractual requirements thereof providing that a loss must be supported by records. Pie kept no records; therefore, he was unable to support his loss therewith.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.